Good to be back, your honor. Thank you. May it please the court, my name is Jonathan Byrne. I'm arguing this morning on behalf of both appellants in this matter, Rhonda and Robert Notgrass. With me at council table is Emily Sapinski, who is my co-counsel in representing Rhonda Notgrass, as well as CJA panel member Natalie Atkinson, who is representing Robert Notgrass. It is good to have you all. This case is about several... Sorry, your honor. This case is... Are these things, are they, are they a layover to one another? Are there different issues at all between the husband and the wife? There are two appeals. There are two appeals. They all involve the special conditions of probation. Two of them overlap. Two of them are separate. But the basis for the argument is the same for all of them, which is that these were special conditions of probation. The Notgrasses made specific substantive objections to them being imposed in these cases because they argued they didn't, they weren't required. The district court at sentencing went ahead and imposed them mostly because the district court included they were appropriate without a specific explanation as to why. And so our position is that the district court abuses discretion in imposing those conditions both because there was no explanation as to why they were appropriate in these cases, but also that they are not appropriate conditions to be imposed in these cases at all. Dismissed by the government based on appeal waivers are still pending. That's correct, your honor. And how do you get past those? I get past those by looking at the specific language of the waiver in these plea agreements. The specific language says that the Notgrasses waive their right to seek appellate review of their conviction of any sentence of imprisonment, fine, or term of supervised release. And so the language of the waivers does not mention probation at all. And I think it's particularly important in that to look at the colloquy at the Rule 11 period. Before you get to the colloquy, which can't really change the language, can you tell me the phrase there, any sentence of? What follows the of can either be one thing or three things, right? So you can either read this as saying any sentence of imprisonment, fine, or term of supervised release, all three types of sentences, right? Or you can read this as saying any sentence of imprisonment, right? Separate thing, any fine, separate thing, any term of imprisonment, right? What follows the preposition of, do you read that to be a single thing, imprisonment, or do you read that to be all three things that are listed there? Imprisonment, fine, and term of supervised release? I read it to be the three separate things. And I think this is where it's instructive to compare this case with Singletary that the government relied on. In Singletary, the waiver says the defendant waives the right to appeal whatever sentence is imposed. I totally get that distinction. But why do you read them as being three separate things? Well, because they are three separate things. A sentence of imprisonment does not necessarily include a fine, a sentence. And I think it's significant here also, likely, in sentencing order, you can get it to mean neither of them got any of that. That's correct, Your Honor, yes. It's a probation. That's correct. And there's a material distinction between probation and, for example, supervised release? Yes, Your Honor, that's correct. And I think this would be a different argument if they had gotten a term of... Basically, there's no argument that probation is not covered here. Yes, that's correct, Your Honor. All right, but just walk me through. If these are three different things, then help me understand. So the government doesn't disagree with that, I don't think. I'm not totally certain, but I don't think they do. Their argument is that the next clause is what governs, right? That this first clause is like the substantive reasonableness. And the next clause, which is the manner in which the sentence was determined. And just pause it for me for a second, that everybody understands, at least in isolation, the term sentence to include any term of imprisonment, any fine, any term of supervised release, any term of probation, any types of conditions, a special assessment. All those are parts of the sentence, right? We have extensive case law saying that. And so why don't we understand the second clause where it says the manner in which the sentence was determined to, like, actually directly govern the issue that you have here? I think there are several reasons. One is I think you have to read that the manner in which the sentence was determined language in the context of this waiver. And the context is it comes after that list of imprisonment, fine, or term of supervised release, and then before it's restated again. And so I think it... When it wants to be specific, it's specific. And it wants to be general, it's general. So I understand that. So that seems like the government's argument. I don't understand why that's your argument. That's the opposite of what you wanted to say, I thought. Well, perhaps I wasn't being as clear as I had hoped to be. You have to read that language in the context of what is being waived. And what is being waived is the right to appeal a sentence of imprisonment, fine, or term of supervised release, not a sentence of probation. Or, right, you're right, you can't appeal those things, any sentence of imprisonment, fine, or term of imprisonment, or, which means something different than what we just said, right, because we have to give independent meaning to both clauses, or the manner in which the sentence was determined. And we would naturally understand the sentence, right, to include the whole sentence, right? We have the sentencing package doctrine, right, all of these ideas that you're quite aware of, they're all part of this sentence, right? So when it wants to be specific, it is specific, and when it wants to be general, it's general. Help me understand why that's not the right way to read this. I don't think it's the right way to read this, partly because, as I said, the context is different. If the waiver was just, waive right to appeal a sentence, and the manner in which it was, or the manner in which it was imposed, I think that's a different argument. But we're talking about a waiver of specific parts of a sentence that are being addressed here. And to allow this language... But why is the language they addressed in the first clause relevant to whether they're included in the second clause? Because if issues beyond those three are included in the second clause, the second clause subsumes the other clauses. No, no, because the second clause is limited to the manner in which it's determined, not what the number is, but the manner, right, the procedure. Right, the first one, you get to review the substance of the first one, but you only get the procedure on the second one. And that's where I think, in talking about context, what I see there is the first section is, like you say, it's the substantive reasonableness of it. The second is the procedural reasonableness of those elements of the sentence. And this is where, like I said, the comparison with Singletary is interesting. This is not a... Do you agree that a fine is part of the sentence? Generally speaking, yes. And that in the first clause, when it refers to fine, it's referring to part of the sentence? Yes, it would have been part of the sentence, yes. Right, but the first clause is referring to fine as part of the sentence. Yes, it is a part of the sentence that they're waiving their right to speak. So, in other words, the first clause describes a subset of the total sentence, right? It doesn't include the special assessment, right? It obviously doesn't include probation. But why do we think that that subset in the first clause is a limit on the second clause? That's what I'm having trouble with. Well, I think because of the context in which it is set out. Because to the extent that this is unclear, it is construed against the drafters, which is the government in this case. And this is why I was going to point the court to a judge. It's unclear here that this was drafted by the government? That's the rule in criminal cases. Well, I think there's something in the record that indicated it went back and forth. You might not want that. I don't mind. Here the government wrote it. As far as I know, Your Honor, yes. Nothing to show the contrary. Nothing to show the contrary, yes, Your Honor. Well, you were in the middle of it, weren't you? You're the counsel to the defense. I am now. I was not below. Well, but your office was. Yes. You're the only one that got it. Yes. Yeah. But you're saying it was taken early, did you? I don't know that the specifics of that are in the record at all. You're saying they wrote it. That is my understanding. And ambiguity goes against them. That is my understanding, Your Honor, yes. Yes, Your Honor. Yes, sir. The reason I was going to point the court to the colloquy at the Rule 11 hearing, both Rule 11 hearings, is because Judge Berger goes through, you have waived some appellate rights. Here is what you have waived. It does not include the or any manner imposed language. It just says you have waived your right to oppose through appeal, sentence of imprisonment, fine, or supervised release. And she goes specifically through other waivers of the waiver of right to conviction, what remains in a 2255, that sort of thing. So clearly the court's understanding, it seems to me, was that it did not include, which goes to the ambiguity of the language, if nothing else. But you point to a different part of the sentencing hearing where it seems broader because it just refers to sentence, right? Like we all recognize that in the sentencing hearing, they're providing a summary of what's happening. Right? We've got to look at the actual contract. Yes, Your Honor. This is one of the goals. What happened in the sentencing hearing can't amend it, can it? No, Your Honor. That wasn't the sentencing hearing. That was Rule 11 hearing. Judge Berger asked, I guess, the prosecutor to summarize what this waiver deal was about. Yes, Your Honor. My point is simply that the judge, in explaining to our clients what they were waiving, viewed it as waiving these three things. One of the two clauses, right? Correct. Summarize the first clause and not the second clause. Correct. But it would be unreasonable to believe that there's only one clause in this section, right? There are two clauses. That's fair. Right? The other thing I would say is we have some cases in our response to the government's motion to dismiss that deal with these waivers where there's like part of the sentence that is waived and the government tries to expand it to include the entirety of the sentence and the courts reject that pretty consistently. And part of the reason they reject that is if the government wants a broader waiver, the government can write a broader waiver. But our job is to read what we've got and understand what it means. Of course. If there aren't any other questions on the waiver, I'll move to the merits of the conditions themselves. The key to the argument that you make is your client's got probation and that's not covered. That's correct, Your Honor. At bottom, that's it on the waiver. And that means that you can raise these issues. Yes, Your Honor. I wonder why nobody briefed the waiver. You made motions back and forth, and then we took them under advisement, pending the oral argument and the full briefing, and everybody briefed the issues and didn't say a blame thing about the waiver in the brief. So you think? Well, that's true. We didn't raise it in our opening brief. That's because this court in Poindexter lays out a procedure for handling appeal waivers. If the waiver is what you say it is, we can get there. But what he says is we don't get to the issue. That's correct, Your Honor. But what this court said in Poindexter is that essentially the waiver is a dead letter until the government invokes it. Well, they invoked it. But they invoked it after. Before you filed any briefs. No, they invoked it after we filed a brief. Oh, they did? Yes. Our brief came first. Okay, well, I'm backwards then. Which is generally what happens, at least that of our district. Okay, you briefed it first. It's hard to invoke the waiver until you know what issues the defendant has raised. Yes, I think that's fair. The waiver doesn't include everything. That's satisfying. Yeah. Thank you. So just very briefly on the conditions themselves. We will give you time to do what you need to do. I'm taking your time here with this. Waivers, they're right. It's the end of things. This is true. It's true, Your Honor. So maybe the best way to do it is do Your Honors have questions about the conditions themselves that I can answer to help guide you on those issues? Do you agree that the degree of the district court's explanation depends on the circumstances? I assume you do? Yes. Right? I'd say that. And one of those circumstances is the nature of the objection that's raised. I think that's fair.  Right? So that's really where I fundamentally, I think, run up to problems. I want to give you the chance to explain it. Right? So in an instance where we have a standard condition, right, sort of like a guideline sentence, seems presumptively reasonable to me that it's included, and your client makes an objection, and not to put a fine point on it, but basically your client says, this is bad. I don't want it. Right? But there's no, like, reasons given, best I can tell. The district court responds, but, like, in sort of a similar fashion. Like, I don't think this is unduly restrictive. I think this is, you know, in line. And so, like, it seems like to me that the nature of the response, like, depends on the nature of the argument. And given the nature of the argument, at least as contained in the addendum to the PSR, it seems like the response here was more than sufficient. But I want to give you a chance to respond. I know that's like a macro question, but what's your response? Well, I'd make two responses. One, there is no such thing as a standard condition. It's either mandatory or it's special. That's what Congress says. That's what this court says.  So assume that I believe that there are such things as standard conditions that various agencies, like the Census Commission, sets out as standard. Not always. Not always required. Right? And not, you know, only required in special circumstances, but generally applicable, like a guideline. So assume that I think such a thing exists. Like, help me understand, sort of, why the response in those types of scenarios isn't just proportionate to the nature of the objection that's raised. Well, I think, first, I want to make clear that where there's no objection, there's no need for, to make the specific findings. But the objection— I'm not totally sure that's right under our case law. Well, at least that's not—we're not challenging all the other— Well, but it matters, right? Because it seems like that may or may not be right under our case law. We could have that debate. I understand. You're not arguing that. Right? But we have a very simple, generic objection. I want to have guns. Right? I don't want to have to ask somebody to travel. Right? I mean, that's the nature of the objection, and the district court responds in kind. Right? And we say in the sentencing context all the time that, like, the response is, like, to the objection that's made. I guess my disagreement would be, I think that the conditions we are talking about, these were substantive objections. And they made arguments as to why they did not apply in these cases. Okay. Right? The defendant submits, there is no evidence that a travel restriction is necessary to protect anyone or deter Mr. Notgrass from committing future times. This condition is unnecessary. That's about as, like, nonspecific and general, I mean, as I can imagine. Right? But— Now, this is bad. Don't do it. But short of that— Well, I think it objects to a condition. It says it is not required based on the record in the case, which essentially says—and that puts the burden on the government to prove otherwise. And they never even tried in the district court. They didn't file a sentencing memorandum that said, hey, the defendant is subject to these conditions. They should be imposed, and here's why. Judge Osteen's got a question over here. Oh. Yes, sir. This follows up on Judge Richardson. And for me, it was the condition, Ms. Notgrass poses no danger to anyone, and there's no reason to believe any of the enumerated statutory objectives are furthered by this condition, as it is, and therefore, unnecessary. So, first of all, it seems to me to be a little bit of a silly argument in terms of no danger to anyone because, as Judge Berger said, with respect to Ms. Notgrass, your fraud was not a single event. You and her husband both collected benefits. You submitted a false letter. You lied to the detriment of others. Your actions amounted to stealing money from the American people. This type of offense causes the public to lose trust in our institutions and relief programs like this. So, she has identified at the sentencing. It may have been that in December 2019, nobody would have thought Ms. Notgrass was a danger to the community, but this is a sentencing hearing for a federal offense that, frankly, in terms of the misdemeanor plea, worked out, I think, very favorably to Ms. Notgrass. And that's a credit to y'all. But in terms of the conditions, whether you call it standard, discretionary, or whatever, take the travel restriction, and you argue that that's necessary, not necessary, under 3553A to deter Ms. Notgrass from engaging in criminal activity because she's not much of a danger. But Judge Berger said appropriate and not more restrictive than necessary. What did that language mean to you when she said it was appropriate? What's that condition addressing in your mind? In my mind, and I think you have to read the district court's rulings in the context of what the probation officer's response to the objections were. And largely, the response to the objections were, this is a standard condition that's on the AO form. And that is not a bad thing. How did it get on the AO form? What's that? How did it get on the AO form? I am not privy to that. Well, she cited the judicial conference, right? And the judicial conference put together a report on these, quote, standard conditions. And one of the things they recognized in terms of the travel restriction is this condition enables the probation officer to satisfy the statutory requirements to be responsible for any defendant known to be in the judicial district, instruct the defendant about the conditions of supervision, and report the defendant's conduct and condition to the sentencing court. And that's directly from 18 U.S.C. section 3603, which says, a probation officer shall keep informed to the degree required by the conditions specified by the sentencing court as to the conduct and condition of a probationer who is under supervision and report his conduct and condition to the sentencing court. So, even if it's a discretionary condition, it seems to me in looking at it, if you read through all the statutes and all this other stuff, there are some conditions that are necessary to allow the probation officer to discharge their duties under 3603. So, when Judge Berger says, appropriate and not more restrictive than necessary, as I read that, it's not so much that this is a condition that will necessarily deter the defendant, but this is a condition I find appropriate to allow the probation officer to conduct effective supervision, and it's not more restrictive than necessary under the circumstances. That's the way I read her response. And if, in fact, that is what Judge Berger is saying with that statement, appropriate but not more restrictive than necessary, I think she's recognizing what probation is. I'll give you a silly hypothetical. Let's say there's no travel restriction, and Ms. Notgrass and Mr. Notgrass move to Missouri and set up a residence in Missouri, but they decide, for whatever reason, that they're going to work in Kansas six days a week. If there's not a travel restriction of some type, or at least some notification, they're free to go work in Kansas for six days a week, even though they're being supervised in Missouri. And I may be wrong. You can disagree with me if you want to, but that's the way I read appropriate. It's a two-pronged thing. Number one, it does have some effect on behavior by the defendants, but number two, it's very important to allow the probation officer to conduct effective supervision. That's what appropriate means. A few responses to that, if I have the time. One, in 3563, which lays out the standard for imposing discretionary conditions, making the probation officer's job easier is not one of them. Number two, it's to discharge their responsibility. But I'm not certain how, in this case, a travel restriction forwards that ability. There are other conditions, which we're not challenged, regarding residence, regarding maintaining and seeking employment, that cover those other areas. They don't cover travel. Well, even that condition doesn't cover travel hundreds of miles away from where they live, as long as it's still in the district. It allows the probation officer to know when the defendant is in and out of the district, put simply. I'd argue it doesn't actually, unless there's some sort of GPS monitoring along with it. It's a restriction on travel. Because probation can't rely on your client? Well, no. But because a condition that says, stay within your district, and they've stayed within their district. There haven't been any issues while they've been on probation. But my point is that it doesn't actually provide any active monitoring of them in the way that a GPS tracking sort of thing would. It's unusual to be arguing that the probation officer shouldn't be able to rely on your client. Maybe that's the point, but is that an odd argument? That's not the argument I'm making. My argument I'm making is just that this restriction on their liberty, a constitutionally recognized liberty to travel, doesn't necessarily result in a kind of constant monitoring that would give probation a lot of information. Well, you're pretty guilty to something. You give up these constitutional claims. That's true, Your Honor. Well, it can be restricted. I mean, you've got a misdemeanor plea. I mean, I'm surprised that the government wouldn't have given it to you. I'm really surprised that this thing resulted in a misdemeanor. I'm surprised they didn't go to jail for doing something like this. They're stealing from the American people. These are educated people. A minister and his wife. You're a defense lawyer. I think you really hit the jackpot here. I can't complain about it. I can't take credit for that, Your Honor. Well, in my view. Do you agree if we were to grant your request that the district court would have full reconsideration of sentencing on remand? So at that point, the district court should at least take the opportunity to consider whether it got it right the first time? I mean, if he could reconsider and decide that this is indeed as serious as at least some of us think it is. If it went back for remand, but that's not the relief we are asking for. We're just asking for these conditions to be strong. But it's plenary resentencing if we vacate the sentence. Plenary. If you vacate the entire sentence. It's all open. If you vacate the entire sentence, Your Honor, yes. You're in prison. You're in jail, whatever it's called. That's the maximum penalty, right? It would be, Your Honor, yes. Deincarcerated. No more probation. If it was a plenary resentencing, that's not what we're asking for. Then you don't have to worry about it. That's what you have to ask for, right? That's what the sentencing packing doctrine means, right? Is that it has to go back because it's done as a package. I'm not sure that that's right, but the Fourth Circuit says it's got to go back. It's a plenary rehearing. If we've got a problem with the supervised release condition, it goes back and we do it again. And the district court then is going to talk to the probation officer and find out how your clients have been performing on probation. And based on that performance and based on its reconsideration, it's got to start over. It gets to decide, do they go to prison or do they continue on probation? And if they continue on probation, how do they continue on probation? And it may be some of these requirements, maybe other requirements, maybe not some of these requirements, but it's got to do it plenary from the start as if this one didn't happen. I would just point the court to its decision in Castellano where it did strike conditions from a judgment without a remand. And that would be what we are asking for. Would that be our discretion? You think we have discretion to strike something in the sentencing order? I think so, Your Honor, yes. Is that a case where we lack explanation? It was on the substantive reasons of the conditions. All right, but this is not a substantive reason. This is a lack of explanation. I'm not aware of any case where we found a lack of explanation and then we struck the term of imprisonment or the term of probation or the term of supervision. We send it back. Lack of explanation just means it's a procedural problem. And it absolutely could justify all of these, could justify a year in prison. Might not have done it the first go around, but they can be justified. We have to send that back. I don't understand the authority for us picking and choosing based on a procedural failure to explain argument. Well, first of all, Your Honor, we have a procedural and a substantive argument. And so you can rule on the substantive argument on the conditions themselves. But even on the procedural... All right, so to bracket that for a minute because that argument is not a very good one. So if we were just addressing the procedural argument, help me understand how we would just reach down and pick and choose which ones to pull out? I still think you can do that in a case like this, Your Honor, where this isn't a situation... Is there any instance where we have a failure to explain on a sentence where we don't send it back for a plenary re-sentence? Not that comes to my mind right now, Your Honor, now. So you're open about the understanding, if you're right. I mean, that's my understanding of the way we do things. I guess my thought would be if the court does not grant the relief request to not grant relief at all, would be the... You can withdraw your appeal, but you don't get to choose reliefs for the... You brought a claim. That claim requires a certain relief. If you prevail on that claim, you get the relief. You don't get to say, I want to make this claim, but only grant it if it comes with a Snickers bar. Right? Like you get the relief the court requires. Yes, Your Honor. Thank you for indulging me. Thank you very much, Mr. Byrne. Mr. Redmond. Good morning, Your Honor. Come right along here. Good morning, Your Honor. May it please the court, my name is Alex Redmond. I'm an AUSA from the Southern District of West Virginia. It's my first time here before the court, and I'm glad to be here. Thanks so much. Gentlemen. Good to have you here. Thanks, sir. Why'd y'all give him this sweetheart deal? Deals. Give each of them a sweetheart deal. Your Honor, I think this was a sweetheart deal. I think if I'm going to speak openly about that, I believe that there was a lot of these cases going on at the time period, and they were trying to resolve them in a way that was efficient. And unfortunately, this one, the gift horse is kicking. So right now we're trying to preclude that. Our request to this court is that the appellate waiver be upheld. And the reason specifically that that's our request, Your Honor, is because probation is a sentence. Probation is the sentence in this case. And the appellate waiver, as Judge Riverson correctly stated, is bracketed off on procedural fairness, procedural grounds in the plea agreement. Don't take too much comfort. All right. So help me understand how I read this. So the first part where it says any sentence of, do you believe that the word that follows of, is that a single list? So in other words, any sentence of imprisonment, full stop, and then any fine and any term of imprisonment or any term of supervised release, that those are three different things that are modified by the term of, but don't follow the, by the term any, but don't follow the preposition of. Is that how you read them? Your Honor, I do read them to be separate things that are substantive sentences that are precluded from appeal. Substantive things. Yes, Your Honor. Right. But only one of them is called, at least in the first clause, only one of them is called a sentence. Right. A sentence of imprisonment. We all know that a fine is a part of a sentence, but it's not in the first clause called a sentence, correct? Your Honor, I do believe that that is actually referring to that as a sentence, and those three items are then listed as sentences of those things. Would you agree it's ambiguous? You put a comma, and then you go fine or term. No comma after fine or term of supervised release. Your Honor, I think Richardson's exactly right. The second part of it is an ambiguity. I mean, you write these things. Why y'all get in these appeal waivers is a puzzle to me. Why would you give a sweetheart deal and then ask them for an appeal waiver? Anyway, I mean. I used to be a federal prosecutor a long time before Judge Richardson. Not that long. I've never heard of an appeal waiver. I mean, somebody wanted to plead guilty, they plead guilty. Sometimes we let them plead one count out of five or something, and we tell the judge what the deal was. We never ask them not to be able to appeal. I mean, that's part of the process. I mean, due process. If you make a mistake in the district court, there's an absolute right of appeal in the statute. It's a final order. And they created these courts of appeals to review problems in the district court. And the government's spending more time writing up these appeal waivers than they are writing the indictment. We're having a trial. Maybe not spending enough time writing the appeal waiver. Then you write the appeal waiver, and we spend time figuring them out. Are they ambiguous? If they are, they don't work the paper they're written on. According to the law, they've got to be clear. And if they do apply, even if the government screwed up, the defendant can't get it fixed. But here, they're trying to appeal things that don't amount to a hill of beans. In a case that should have been going to trial, they should have gone to jail. I'm talking about things I shouldn't probably even be talking about. But that's just my reaction to this case. And I'm getting all cranky, too. And I'll stipulate to that. You're almost saying that there is a distinct benefit to the United States in having an appeal waiver. It's a benefit to it. You don't have to do any work. And you don't get the experience. If the appeal waiver is interposed and we throw it out, you don't get the opportunity to come down here and argue. Well, sometimes we do, Your Honor. When I was assistant U.S. attorney, we were here every month arguing cases. And I argued dozens of them in the Fourth Circuit. And it was invaluable experience. I couldn't have had better experience as a lawyer than trying cases, write the verdict, and I lost a few, and come into the Fourth Circuit and argue the case. Wonderful opportunity. And you all undermine that by making everybody waive their appeal rights and plead guilty to a misdemeanor in an open and shut felony case. Judge King's making a very good point. I'll say something that corresponds to that on the district court side. And that is the decrease in cases doesn't make everybody better. Decrease in trials. Trials and appeals and other things really help develop. Now, I'm not making a comment on whether you should or shouldn't have an appeal waiver here. Because I understand there is some benefit. But as with everything else, every action has some collateral consequences. And I understand exactly what Judge King is talking about. I was a defense attorney, so I wasn't quite as excited to come to the Fourth Circuit as Judge King might have been. But that was just me. Let me flop you to the other side. Judge Richardson talked about the first part and that phrase. And the general term sentencing as opposed to sentence of imprisonment, fine, supervised release. If you go to the second part, then you all have emphasized in terms of procedural versus substantive issues, the manner in which the sentence was determined on any ground whatsoever. Including any ground set forth in 18 U.S.C. section 3742. So long as, so long as, and then there's that sentence, which in my mind relates back to the manner in which the sentence was determined. So long as that sentence of imprisonment, fine, or term of supervised release is below or within offense level 10. So when I read this, I agree with Judge Richardson 100% that if you use the term sentencing and manner or sentence, that's a very broad category and captures a lot of things. But I'm not, in terms of context, as was argued by the defendant here, the first part has that phrase. But then in terms of that second part of the sentence, so long as that sentence of imprisonment, does that then modify the phrase in the middle, the manner in which the sentence was determined? Your Honor, it's the United States' position that that procedural section that's cordoned off by commas stands alone to waive the procedural issues with this case. And that's what the benefit that is the United States. And why use the term that sentence in that final phrase? Why not just say the sentence? Nearest reasonable reference, right, is the word the sentence, which comes right before it. Your Honor, and this gets to another issue that it's not exactly on point to the question, Your Honor. I'm sorry. I'll come back if I need to. The issue here is. I'd say stick with it for right now. Yes, sir. You answer the questions. When they ask them, you answer their questions. Yes, sir. Not what you want to answer, but to answer the questions you get. Yes, sir. That's what I do. Your Honor, once again, I believe that sentence stands alone and that that is referring to the merit-based arguments that are going to preclude an appeal for the items listed in the first section, and also for anything under 18 U.S.C. 3742, which would be an illegal sentence. Can I ask a follow-up to that? When it says that sentence of imprisonment, and then it talks about a fine or supervised release, are the fine or term of supervised release governed by the sentencing guideline range? I thought they were governed by statute. Is the guideline offense level 10? Does it have anything to do with the fine? Your Honor, I do believe that the guideline range. There is a guideline in the sentencing manual that does kind of help you with the fine amount for the sentencing guidelines. I know, but it doesn't refer to the guideline range corresponding to offense level 10. I agree. There's a separate provision about fines. There are guidelines about fines. But the fine guideline and the statutory guideline about fines has nothing to do with the range being offense level 10, right, corresponding with offense level 10. Agreed, Your Honor. And I think what's trying to— That sort of makes this gibberish, right? This is a little bit of a challenge that I'm having, right? So I'm with Judge Osi. I'm trying to figure out what in the world this thing means. And that sentence of imprisonment, I understand what that part means. But the term of supervised release that's within the guideline range corresponding to offense level 10 doesn't make any sense to me. So I'm like, I'm struggling to understand whether this is like a sensical provision or whether it's like a random assortment of words that have been put on the page. Your Honor, I believe what's trying to be accomplished here is to— I know exactly what's trying to be accomplished. You don't have to ask. That question I totally know the answer to. I was a prosecutor for a long time. What I'm asking is what is accomplished? What is accomplished here is it's setting a ceiling. And it's saying if there's anything above guideline 10, then you're going to be able to appeal it. And it's saying anything below that, you're not. That's what is being accomplished in this paragraph. It's saying, hey, anything above it, you're not. And here we are now appealing something that's far below anything that was contemplated in this paragraph. This sentence is so far below this paragraph that it wasn't even contemplated that it would be given. And that's why we have conditions of probation instead of conditions of supervised release because we're talking about non-imprisonment conditions. But probation is not in there anyway. That's correct, Your Honor. Probation is not on there. And these sentences, if you look at the sentencing order, it's probation. Yes, Your Honor. I agree. It is a sentence of probation. You can replace the probation by saying everything but probation. Your Honor, what I'm pointing out is that this paragraph gives a ceiling and not a floor. But at the same time, I think it's important in that context, and this is a question that you asked, Your Honor. And why include anything? Why not just say any sentence below a 10? You're not appealing. I think that would be an effective change, Your Honor. That would be pretty clear. Yes, sir. But the point I'm trying to make here, gentlemen, is in this case— Can I ask you a different question, Greg, because this is like nonsensical on another level? Sure. So, like, the guideline range for a 10 is 6 to 12 months. Yes, sir. They were sentenced on a misdemeanor, which means by definition they couldn't have been sentenced to more than 12 months? That's correct, Your Honor. So, like, there's no world in which this, like, applies, right? Because, like, they can't be sentenced to more than the range for a 10, which is 6 to 12 months. Well, Your Honor, I think it's just a little bit duplicitous. And what I mean by that is typically what you'll see in these N.R. felony cases is you'll see you cannot— you can appeal if it's above the statutory maximum. And that's going towards exactly what 3742 is and what that sentence that we're talking about right now is. It's both saying, hey, if it's illegal or if it's above what would be a legal sentence, then you're going to have an opportunity to appeal this case. We're saying as long as it's a legal sentence is what we're trying to achieve, then you are not going to be able to appeal this case, especially if it's on procedural grounds. And just to kind of get to this issue of Judge King, you asked this question about is supervised release different than probation to the opposing counsel. I think this is a place where the case law is a little bit confusing. I understand pragmatically they're different. One is after imprisonment. One is pre-imprisonment. But when these conditions were objected to, they were supervised release. They were proposed conditions of supervised release. And then they were ordered to be conditions of probation. So as of right now, we don't even have an objection to conditions of probation. And the conditions that were there, the objections that are there were not substantive, so they weren't even held on the record. So as of right now, we don't even have objections on the record from the hearing that are standing. And I think it could be helpful to have clarity in these kinds of cases where our proposed conditions of supervised release convert to conditions of probation to have clarity in the fact that these should be looked at legally the same. Because when you look at the appeal on the merits in this case, if we were to get past the appellate waiver, which I hope we don't. Let me stop you. I don't understand that argument at all. I mean, didn't Judge Berger say when she issued her rulings that your objection is stands? Or some words to that effect? I believe she said it was maintained for the record, something to that effect. Yeah. So what do you mean there's no objections? The objections are substantive objections. And what we have in this case are procedural objections only to the manner. The appeal is only to the manner in which the sentence is provided. It's not saying, hey, the objection in the – when I read the appeal, the appeal is the manner in which the sentence. By not giving enough rationale, we now are saying that was wrong. And that's why this case should be returned from the defense's perspective. It's the government's perspective that would be precluded from the appeal. And also, that objection was never actually made on the record until the appeal took place. You agree that if you lose, that the case has to go back for a plenary resentencing? Your Honor, I unfortunately am not well versed in that issue. I will say that it is my – I have not read a case that specifically grants, in my opinion, the authority to the court to do this on a procedural case. But I have not investigated that enough, Your Honor. Gentlemen, when I look back at the appellate waiver specifically, what's important here is, and it's been discussed by the idea of a global sentencing theory, the idea that any sentence under Chapter 227 of the Code is a sentence. And that's the thing that the United States is seeking to have precluded from appeal when it's procedural. And this is a procedural appeal based on the manner in which the sentence was given. If you had put a period then after the word sentence on the third line of Paragraph 12, that would have been satisfied. That would take care of it, wouldn't it? It would be a helpful addition, Your Honor. And the next six lines of that one sentence, whatever it is. Yes, sir. Again, to waive a – to waive review on appeal of any conviction and any sentence, period, is what you wanted to say. That's what you wanted to say in that – in that appeal waiver paragraph. Your Honor, while there are – But you didn't write it that way. Correct. You put all those other qualifications in there. Correct, we did not. And I want to clarify one thing, Your Honor. Getting into offense guidelines, regardless of criminal history category. In fact, in sight of the statute, you'd have to understand the sentence. You've got to go read 3732 of Title 18 and understand the sentence. Yeah. Agreed, Your Honor. There could be – there could be corrections. You could have saved 90% of your time if you just tried the case. You could drive it a half a day and it would have been over with. I agree, Your Honor. I would like to try this case. All right. But the situation we have here is we have this appellate waiver where the interpretation that would prevail for defense is not that it's ambiguous. Because this is – this is not sufficiently ambiguous to be thrown out, to not understand, but to be non-intelligible. But when you look at the defense – Ambiguous. Are we talking grades of ambiguity now? Maybe it's a little bit ambiguous. A lot ambiguous or moderately ambiguous. The test is ambiguity. Your Honor, what I think we're looking at here is, is this intelligible? Do we understand this? Could it be improved? I think it could be improved. But I don't think it's intelligible.  You said it would be helpful and it could be improved. Improved as to what? Improved as to the clarity? I think it could say any sentence, Your Honor. As we've discussed here today, I think that would be helpful. Improvement as to clarity of the language, right? Yes, Your Honor. And if we can see that there could be improvements as to clarity, the reason you want more clarity is because maybe it's a little bit ambiguous. Is that fair? I understand the logic, Your Honor. Is that fair? I think it's a fair interpretation. But just because something can be clarified, just because something can be made better does not mean it's ambiguous to the point where we should throw it out. I get that. It can be made better. But when you're talking about it would be helpful for clarity's sake to revise it, it seems to me that's an acknowledgment that it's at least a little bit ambiguous. Is that fair? I think that's a fair conclusion one could make, Your Honor. That's not our position, though. I understand that. Your Honor, I just want to point out that the defense's argument for them to prevail on this issue of the motion to dismiss. Can I ask one? You just got a minute. Let me ask the final question. Yes, sir. I think I understand this, but I want to make sure this is the government's position. In the first clause, and the second clause, and the third clause, there are three uses of the word sentence. Do you believe in the first clause that it is the sentence of imprisonment, and so that's time in prison? And the third clause, it's sentence of imprisonment, so that's like time in prison? But your interpretation of the second clause is that we ought to read sentence more broadly to include the special assessment, and probation, and anything else that goes along, any fine or restitution. All of that would be included in the second clause, even though it is plainly not included in the first or third clause. May I respond, Your Honor? Please. That is the United States position, and that we never redefine sentence in our plea agreements. Sentence still has its normal term and usage in the law. Thank you, Your Honor. Thank you, gentlemen.  Thank you. Appreciate it. Mr. Byrne, you saved time. I don't want to delaborate anything, given how long I was up here at first, but I just wanted to address this issue that the government brought up here about somehow, because of the conditions that were imposed or conditions of probation instead of supervised release, that there weren't objections made to them. First of all, the government said in its brief that the proper standard to review here is abuse of discretion, which is the standard for special conditions, so I think that vote has sailed. But number two— No, his point's a little more nuanced than that, or at least I understood it to be. —is that it's evidence that what everybody understood was happening here were like not a difference between supervised release and probation, that they are technically different, right? They're different statutory provisions, but we all sort of understand them interchangeably. And, in fact, people use the phrase, when it's a technical probationary sentence, people, like us, often still refer to that as supervised release. It's not technically accurate, but it is sort of like a use of term. I understood that was the point he was making, and that we ought to understand these terms in that light, right? Not that there's a waiver of an argument. I misconstrued, perhaps, that argument. But I was just going to point out that the conditions that were laid out were the conditions that were imposed, and Judge Berger did impose them by saying, I am rejecting your objections to them. —But the objections that were—the pre-sentence report and the objections were to the terms of supervised release. —That's true. —I mean, it doesn't say terms of probation, right? —Correct. —Even though it was a probationary sentence, everybody talked about it as terms of supervised release. That's not technically correct. I totally accept that. But as a colloquial term, we use it both ways. And I took him to be saying that they said terms of supervised release. You objected to the terms of supervised release, and that that's what was at issue. And so to include that in the plea agreement, which had come before, doesn't create ambiguity as to what was covered. It was only at the very end of this process that we knew it was going to be probation. —I'll leave it at that, Your Honor. Thank you very much. —Did the term supervised release replace the term parole when they adopted the sentencing guideline? —The sentencing reform. —So it used to be probation and parole. And everybody understood the difference. Probation meant you walked out of the courthouse after the sentencing and went home. Parole meant you walked out of the jailhouse after you did some sentencing and went home. —Yes, Your Honor. —And they abolished parole. And they put in the term supervised release. We're going to construe this thing. We have to take that into account. —There are two different things. Probation. —Yes, Your Honor. There are two different things. —And supervised release. —Yes, there are. Thank you, Your Honor. —Thank you, Mr. Byrne. We'll come down and re-counsel. And I don't know about my colleagues, but I'm going to need a break, so I'm going to call one. —This honorable court will take a brief recess.
judges: Robert B. King, Julius N. Richardson, William L. Osteen Jr.